FILED
2008 JUN 24  PM 4: 35
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____KNH_____DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHATION MURPHY,<br><br>                              Plaintiff,<br><br>vs.<br><br>REPOSSESSION SPECIALISTS, INC., d/b/a ABA RECOVERY SERVICES, INC., *et al.*,<br><br>                              Defendants. | Case No. 05cv1866 BEN (AJB)<br><br>**ORDER DISMISSING ACTION WITHOUT PREJUDICE** |

    Plaintiff Shation Murphy has filed this action claiming that Defendants ABA Recovery Services, Inc. (d/b/a Repossession Specialists, Inc.) and Triad Financial Corporation used abusive tactics to collect a car loan. Dkt. No. 4 (Nov. 4, 2005). Murphy settled her claims with ABA. Dkt. No. 50 (June 26, 2007). Because the settlement resolved the sole federal claim, the Court issued an Order to Show Cause, directing the parties to explain why the Court should not dismiss Murphy's remaining claims for lack of subject matter jurisdiction. Dkt. No. 58 (Mar. 10, 2008). In response to the Order to Show Cause, Murphy and Triad urged the Court to retain jurisdiction. Dkt. No. 59 at 2 (Apr. 7, 2008); Dkt. No. 61 (May 14, 2008). In their briefs and at oral argument on June 2, 2008, they argued that: (1) the Court possessed subject matter jurisdiction under the substantial federal question doctrine; and (2) the Court should exercise supplemental jurisdiction. For the reasons set forth below, the Court rejects their arguments and dismisses this action for lack of jurisdiction.

# FACTS

## I. Murphy's Claims and Jurisdictional Basis

In her First Amended Complaint, Murphy alleged that in 2004, she fell behind in repaying a car loan from Triad. Dkt. No. 4 ¶¶ 18-20. According to her, Triad assigned the underlying loan to ABA, knowing that ABA would "use false, deceptive, or unfair practices" to collect the loan. *Id.* ¶¶ 24-25. These practices allegedly included placing telephone calls to her residence and place of employment in an abusive manner. *Id.* ¶¶ 31-33, 65-66. In addition, Defendants allegedly visited her place of employment and her sister's residence without consent. *Id.* ¶¶ 37-38, 60-64. During these visits, they demanded repayment of the underlying loan in an abusive manner. *Id.* Based on these allegations, Murphy sought damages under the federal Fair Debt Collection Practices Act (the "Federal FDCPA"), 15 U.S.C. § 1692 *et seq.*; California's Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act"), Cal. Civ. Code § 1788 *et seq.*; and common law.

Murphy brought two state law claims against Triad: (1) violations of the Rosenthal Act; and (2) negligence. Dkt. No. 4 ¶¶ 75-77, 84-88. As part of her Rosenthal Act claim, Murphy alleged that Triad violated the Federal FDCPA and in turn, Cal. Civ. Code § 1788.17 because that provision required compliance with the Federal FDCPA. *Id.* ¶¶ 65-66. In addition to the alleged federal violations, her Rosenthal Act claim involves a host of state law issues:[1]

- Whether Triad is a "debt collector" within the meaning of Cal. Civ. Code § 1788.2(c);
- Whether the underlying loan is a "debt" and a "consumer debt" within the meaning of Cal. Civ. Code § 1788.2(d)-(f);
- Whether Murphy and Triad conducted a "consumer credit transaction" within the meaning of Cal. Civ. Code § 1788.2(e);
- Whether Murphy is a "debtor" within the meaning of Cal. Civ. Code § 1788.2(h);
- Whether Triad violated Cal. Civ. Code §§ 1788.10-13;
- Whether Triad's alleged violations are intentional under Cal. Civ. Code § 1788.30(e);

///

---

[1] Murphy and Triad identified these disputed issues in their Jointly Submitted Pretrial Conference Order, which "supplement[ed] the pleadings." Dkt. No. 53 at 18 (July 9, 2007).

    •     Whether Triad is liable for ABA's actions under Cal. Bus. & Prof. Code § 7507.13(c); and

    •     Whether Murphy can recover punitive damages or damages for emotional distress.

Dkt. No. 53 at 5-15.

In addition to state law claims, Murphy brought a Federal FDCPA claim against ABA. Dkt. No. 4 ¶¶ 72-74. This federal claim formed the sole basis for jurisdiction because no diversity jurisdiction existed. *See id.* ¶¶ 9-12 (all parties are California citizens).

## II. Procedural History

The parties completed discovery in 2007. They had no discovery disputes that required the Court's intervention. Nor did they make any dispositive motions. In over two years of litigation, Murphy made only two motions, but withdrew both of them as moot before the Court had the opportunity to issue a ruling. *See* Dkt. Nos. 18, 57. This case was ready for trial in 2007. Trial was delayed, however, because Murphy filed for bankruptcy. Dkt. No. 59 at 2.

During the pendency of this case, Triad commenced a state court action to recover the underlying loan and obtained a judgment against Murphy. *Id.* ABA, on the other hand, settled this case with Murphy. Dkt. No. 50. In their Jointly Submitted Pretrial Conference Order, Murphy and Triad conceded that ABA's settlement destroyed federal question jurisdiction. Dkt. No. 53 at 2-5.

## III. Order to Show Cause

Following ABA's settlement, the Court issued an Order to Show Cause, directing the parties to explain why the Court should not dismiss Murphy's remaining claims for lack of jurisdiction. Dkt. No. 58. Murphy and Triad responded to the Order to Show Cause, urging the Court to retain jurisdiction on two bases: (1) supplemental jurisdiction; and (2) the substantial federal question doctrine. Dkt. Nos. 59, 61. At oral argument on June 2, 2008, however, Murphy and Triad conceded that no case law required the Court to retain jurisdiction under the substantial federal question doctrine and that decision whether to retain jurisdiction lay within the Court's discretion.

///

///

///

## DISCUSSION

I. **Substantial Federal Question Doctrine**

   A. **The Two-Part *Grable* Test**

   Attempting to meet their burden to establish subject matter jurisdiction, Murphy and Triad invoke the substantial federal question doctrine. *See Rattlesnake Coalition v. U.S. E.P.A.*, 509 F.3d 1095, 1102 (9th Cir. 2007) (parties asserting subject matter jurisdiction bear the burden of proving its existence). Under this doctrine, federal jurisdiction exists where a state law claim "necessarily depends on resolution of a substantial [federal] question." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983). A "substantial federal question" does not arise merely because resolution of a state law claim requires a court to interpret federal laws. *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813-14 (1986). A federal question is substantial only "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Id.* at 808-09 (quoting *Franchise Tax Bd.*, 463 U.S. at 9). To determine whether a state law claim invokes the substantial federal question doctrine, the Supreme Court in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing* prescribes a two-part test: (1) whether the claim "necessarily raise[s] a stated federal issue, actually disputed and substantial"; and (2) whether a federal forum may entertain the case "without disturbing any congressionally approved balance of federal and state judicial responsibilities." 545 U.S. 308, 314 (2005).

   B. **Application of the *Grable* Test**

   Murphy and Triad fail to meet the first part of the *Grable* test. They argue that Murphy's Rosenthal Act claim invokes federal jurisdiction because its resolution raises disputed federal questions. They do not, however, demonstrate why the purported federal questions are substantial. Nor do they submit any on-point authority – and the Court has found none – to support their argument. *See* Dkt. Nos. 59, 61.

   Their argument cannot withstand scrutiny. It is true that Triad's alleged Cal. Civ. Code § 1788.17 violations raise federal questions. Cal. Civ. Code § 1788.17 ("every debt collector . . . shall comply with [the Federal FDCPA]"). It does not follow, however, that these alleged federal violations automatically confer federal jurisdiction. *Merrell Dow Pharms. Inc.*, 478 U.S. at 813 (it is

1 | "long-settled . . . that the mere presence of a federal issue in a state cause of action does not
2 | automatically confer federal-question jurisdiction"). To invoke the substantial federal question
3 | doctrine, Murphy and Triad must establish that the purported federal questions raised by Murphy's
4 | Rosenthal Act claim are substantial. *Grable & Sons Metal Prods, Inc.*, 545 U.S. at 314. But they
5 | cannot do so for two reasons. First, as a matter of law, Murphy can recover a Rosenthal Act claim
6 | even if no federal violations occurred. *See Hapin v. Arrow Fin. Servs.*, 428 F. Supp. 2d 1057, 1062
7 | n.3 (N.D. Cal. 2006) (Jenkins, J.) (plaintiff can state a Rosenthal Act claim, although his allegations
8 | are insufficient to state a Federal FDCPA claim). Second, as stated in the Jointly Submitted Pretrial
9 | Conference Order, Murphy's Rosenthal Act claim involves numerous state law issues. Dkt. No. 53
10 | at 5-15. These state law issues are essential to resolving Triad's liability and Murphy's damages. *See*
11 | *id.* Resolution of these state law issues can dispose of Murphy's Rosenthal Act claim; but resolution
12 | of the purported federal questions cannot. Under these circumstances, the purported federal questions
13 | raised by Murphy's Rosenthal Act claim are not substantial and cannot trigger the substantial federal
14 | question doctrine. *See Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996) (if a state law
15 | claim can be independently supported by a state law theory, the claim does not raise a substantial
16 | federal question).

17 | Murphy and Triad have presented no arguments on the second part of the *Grable* test: whether
18 | this Court may retain jurisdiction "without disturbing any congressionally approved balance of federal
19 | and state judicial responsibilities." *Grable & Sons Metal Prods., Inc.*, 545 U.S. at 314. This is hardly
20 | surprising because their broad proposition – that an allegation of a federal violation automatically
21 | confers federal jurisdiction over a Rosenthal Act claim – conflicts with clear congressional intent to
22 | allow the states to regulate debt collection practices. The Federal FDCPA explicitly provides that it
23 | does not preempt state law unless the federal law and state law are inconsistent. 15 U.S.C. § 1692n.
24 | The Rosenthal Act is not preempted because it provides consumers with a separate state remedy and
25 | affords them broader protection than the Federal FDCPA. *Pirouzian v. SLM Corp.*, 396 F. Supp. 2d
26 | 1124, 1131 (S.D. Cal. 2005) (Moskowitz, J.); *see also Alkan v. Citimortgage, Inc.*, 336 F. Supp. 2d
27 | 1061, 1065 (N.D. Cal. 2004) (Whyte, J.) ("nothing indicates that Congress intended to preempt the
28 | [Rosenthal Act] or to completely occupy the field of debt collection"). Thus, jurisdiction over

1  Rosenthal Act claims belongs to California state courts, especially where, as here, the Rosenthal Act
2  claim raises a host of state law issues and is not predicated upon a federal violation. This Court must
3  not assert jurisdiction over Murphy's Rosenthal Act claim because doing so will inevitably disturb the
4  "congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal*
5  *Prods., Inc.*, 545 U.S. at 314. Accordingly, Murphy and Triad cannot properly invoke the substantial
6  federal question doctrine.

7  **II.  Supplemental Jurisdiction**

8  Triad also urges the Court to exercise supplemental jurisdiction over Murphy's remaining
9  claims. Decision whether to exercise supplemental jurisdiction lies within the Court's discretion. 28
10  U.S.C. § 1367(c)(3); *Acri v. Varian Assocs.*, 114 F.3d 999, 1000 (9th Cir. 1997) (*en banc*) (quoting
11  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 353 (1988)). In exercising its discretion, the Court
12  should decline to exercise supplemental jurisdiction unless retention of the case serves judicial
13  economy, convenience, fairness, and comity. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715,
14  726-27 (1966). Following this general rule in other debt collection cases, the Court has routinely
15  dismissed Rosenthal Act claims after related federal claims are resolved. *See Winter v. I.C. Sys. Inc.*,
16  543 F. Supp. 2d 1210, 1214 (S.D. Cal. 2008) (Miller, J.); *Parker v. CMRE Fin. Servs., Inc.*, No.
17  07cv1302 JM (AJB), 2007 WL 3276322, at *4 (S.D. Cal. Nov. 5, 2007) (Miller, J.); *Weiner v.*
18  *McCoon*, No. 06cv1328 IEG (POR), 2007 WL 2782843, at *6 (S.D. Cal. Sept. 24, 2007) (Gonzalez,
19  C.J.).

20  Similarly, consideration of the *Gibbs* factors favors dismissal of this case. Comity is
21  particularly relevant. As discussed above, Congress clearly intended to allow California state courts
22  to hear Rosenthal Act claims. *Pirouzian*, 396 F. Supp. 2d at 1131. Murphy's Rosenthal Act claim
23  raises a host of complex state law issues ranging from liability to damages. Dkt. No. 53 at 5-15.
24  California state courts have a greater interest in resolving these issues. Moreover, California state
25  courts' inherent expertise in state law matters will ensure a fair and proper resolution of this case.
26  Dismissal will also serve judicial economy by allowing this Court to devote its scarce resources to
27  resolving federal issues and developing federal law.
28  ///

    Triad argues that dismissal would subject the parties to "a full and expensive litigation 'do-over'" in state court. This argument is unconvincing. Litigating this case in state court will not be financially burdensome because discovery has been completed and because, as demonstrated in these proceedings, motion practice will be limited. In any event, the Court's consideration of economy, fairness, and comity outweighs any inconvenience resulting from dismissal. Therefore, pursuant to 28 U.S.C. § 1367, the Court declines to exercise supplemental jurisdiction over Murphy's remaining claims.

## CONCLUSION

    For the reasons set forth above, the Court dismisses this case without prejudice for lack of subject matter jurisdiction.

IT IS SO ORDERED.

Dated: June 2, 2008

Roger T. Benitez
United States District Judge